IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| **JOSEPH FARELLI,** | : | Bankruptcy No. 05-23263 BM |
| | : | |
| | : | |
| **Debtor** | : | Chapter 7 |

******************************

| | | |
|---|---|---|
| **KIRSTON FARELLI,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | Adversary No. 05-2905 BM |
| | : | |
| **JOSEPH FARELLI,** | : | Complaint Objecting To Discharge |
| | : | Of Debt |
| **Defendant** | : | |

Appearances:   Robert R. Druzisky, Esq., for Plaintiff
Jonathan G. Babyak, Esq. for Defendant

### MEMORANDUM OPINION

Plaintiff Kirston A. Farelli seeks a determination in this adversary action that a debt owed to her by debtor Joseph A. Farelli is excepted from discharge by § 523(a)(5) or § 523(a)(15) of the Bankruptcy Code.

Debtor denies that the debt lies within the scope of either provision and insists that it is dischargeable.

Judgment will be entered in favor of plaintiff and against debtor for reasons provided in this memorandum opinion. The debt at issue lies within the scope of § 523(a)(5).

## – FACTS –

Debtor and plaintiff were married in July of 1995. Three children, who respectively are 12, 10 and 8 years old, were born during their marriage.

Two years prior to their marriage, debtor began operating a parcel delivery route for RPS. He continued doing so when FedEx subsequently took over RPS. Debtor began operating a second route for RPS/FedEx in 1997 and then a third route at some time during the year 2000. He eventually owned three delivery trucks and employed three drivers to cover the routes.

Shortly before their marriage, debtor purchased a house to serve as the family residence. Legal title to the property was in debtor's name alone. Plaintiff had no legal interest therein.

Plaintiff was primarily a homemaker. She cared for the children and maintained the household. Plaintiff had studied cosmetology in high school and worked as a beautician on a part-time basis early in the marriage.

Plaintiff commenced a divorce proceeding against debtor on February 4, 2000, three days after they separated, in the Court of Common Pleas of Beaver County, Pennsylvania. In addition to a divorce, plaintiff requested alimony, equitable distribution of marital property and counsel fees incurred during the course of the divorce proceeding.

After the separation but prior to October of 2003, plaintiff earned an EMT certificate and worked on a part-time basis first as a medic and then as a medical technician in a hospital.

An evidentiary hearing on plaintiff's economic claims was held by the state court in July and August of 2003.

The state court issued a decision and decree in the case on October 6, 2003. In its decision, the court determined that the marital estate had a total value of $144,277.00. This included several vehicles, appreciation in the value of the marital residence, a bank account and two savings accounts, cash from the sale of one of the parcel delivery routes, and two retirement accounts in debtor's name.

The state court awarded sixty-five percent of the marital estate to plaintiff and the remaining thirty-five percent to debtor. Debtor was directed to pay $70,200 in cash to plaintiff within sixty days of the date of the decree as well $23,580 from his two retirement accounts. In addition, the state court awarded plaintiff counsel fees she had incurred in the divorce proceeding in the amount of $9,899. The award to debtor totaled $103,679.

As for debtor, the state court awarded him the marital residence, three vehicles, the remaining balance in all of the bank accounts, and the parcel delivery route to the extent that it constituted a "business".

In explaining its decision, the state court noted that the intention of Pennsylvania's legislature in enacting the Divorce Code was "to effectuate economic justice". According to the court, it took in to account the following factors in particular in arriving at its decision: the parties' respective sources of income and their vocational skills; the opportunity for each to acquire capital assets and income in the future; and the

economic circumstances of each party. The court also considered the willingness of debtor's parents, who were of "obviously substantial means", to assist him.

Debtor appealed the portion of the decision and decree pertaining to the distribution of marital assets ordered by the state court, but did not appeal the portion granting a divorce. The Superior Court of Pennsylvania affirmed in January of 2005.

Ignoring the decree issued on October 6, 2003, by the state court, debtor did not make any of the payments to plaintiff he was ordered to make. Debtor testified during the trial of the present case that the payments were "too much".

At some unknown time in 2002 or 2003, RPS/FedEx terminated debtor's right to operate two of the three delivery routes. Debtor eventually sold the third route to another person and is now employed as a nurse.

Debtor filed a voluntary chapter 7 petition on March 13, 2005. The schedules accompanying the petition listed assets with a total declared value of $16,273.63 and liabilities totaling $115,733.56. The marital residence awarded to debtor in the divorce proceeding was not listed as an estate asset. Debtor had sold it to another party in June of 2004.

Plaintiff is listed in the schedules as having a claim in the amount of $80,099.50 arising out of a "divorce settlement". The statement of financial affairs indicates that plaintiff had obtained a judgment against him in that amount in the Court of Common Pleas of Beaver County.

Plaintiff commenced this adversary action on August 5, 2005.  In the complaint, she seeks a determination that the above debt owed to her by debtor is excluded from discharge by § 523(a)(5) or § 523(a)(15) of the Bankruptcy Code.  The matter has been tried and is now ready for decision.

## – ANALYSIS –

Section 523(a)(5) of the Bankruptcy Code provides in part as follows:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt -- ....
>
> > (5) to a ... former spouse ... for alimony to, maintenance for, or support of such spouse ..., in connection with a ... divorce decree ....

11 U.S.C. § 523(a)(5).

Except for types of debt that are enumerated in the various subparts of § 523(a), a discharge in bankruptcy granted in accordance with § 727 of the Bankruptcy Code voids all pre-petition judgments against the debtor.  These exceptions reflect a determination by Congress to permit certain compelling public interests to override the "fresh start" which bankruptcy provides a debtor. *City of Philadelphia v. Gi Nam (In re Gi Nam)*, 273 F.3d 281, 289 (3d Cir. 2001).  Congress intended when it enacted § 523(a)(5) to protect spouses, whether present or former, and dependent children when their support by a debtor in bankruptcy is at issue. *Brown v. Mills (In re Brown)*, 313 B.R. 395, 399 (Bankr. W.D. Pa. 2004).

Because she objects to the discharge of the debt owed to her by debtor, plaintiff has the burden of proving that it is excepted from discharge by § 523(a)(5). *Gianakas v.*

*Gianakas (In re Gianakas)*, 917 F.2d 759, 764 (3d Cir. 1990). She must do so by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286-88, 111 S.Ct. 654, 659-61, 112 L.Ed.2d 755 (1991).

Federal rather than state law controls when determining whether an obligation is in the nature of maintenance of or support for a former spouse for purposes of § 523(a)(5). *In re Gianakas*, 917 F.2d at 762. An obligation may not so qualify under the relevant state law and yet so qualify for bankruptcy purposes. *In re Mills*, 313 B.R. at 399.

How an obligation is described or characterized in a state court decision or decree is not necessarily dispositive in determining its "true nature" for purposes of § 523(a)(5). We must "look beyond the label" attached to the obligation when making this determination. *Gianakas*, 917 F.2d at 762.

Our inquiry is limited in this regard to considering the facts *at the time the obligation arose*. *Id*. Subsequent events, such as a change in the respective financial situations of one or both of the spouses, is not relevant. *In re Mills*, 313 B.R. at 399. If, for instance, the spouse by whom the debt is owed subsequently were to cease being a billionaire and become a pauper instead, we are limited to considering the facts as they were when debtor was a billionaire.

Whether an obligation is in the nature of maintenance or support within the meaning of § 523(a)(5) as opposed to equitable distribution of marital property depends on the *intention* extant at the time the obligation arose. If, as in the present case, the debt is based on a court order or decree instead of an agreement between the spouses,

we must ascertain the intention of the court that issued the order or decree. *Brown v. Brown (In re Brown)*, 288 B.R. 707, 712 (Bankr. W.D. Pa. 2003).

Three "indicators" should be considered when determining the state court's intention in this respect and thus the "true nature" of the obligation. *In re Gianakas*, 917 F.2d at 762.

We first should consider the language and substance of the relevant document in the context of surrounding circumstances. If necessary, extrinsic evidence may be taken into account. An obligation which was designated as a property settlement may be closely related to support, and a state court frequently will adjust a support award depending on the type and the amount of marital assets that are available for distribution to feuding spouses. Dividing up the property between the spouses frequently accomplishes the same objective as does awarding support to one of the spouses. *In re Gianakas*, 917 F.2d at 762-63.

Because the language of a court decision and decree, without more, may not provide an answer as to the "true nature" of an obligation, a second "indicator" we should take into account is the financial situation of the respective parties at the time of the decision and court decree. Relevant considerations may include whether one of spouses has custody of any minor children, is unemployed, or has a job that pays considerably less than the other spouse is paid in his or her job. *In re Gianakas*, 917 F.2d at 763.

The third "indicator" we should consider when determining the "true nature" of the obligation is the *function* of the obligation at the time it arose. An obligation that serves

to provide a spouse with necessities of life such as food, shelter, clothing and transportation "is indicative of a debt intended to be in the nature of support". *Id*.

Applying these "indicators" to the evidence presented at trial in this case, we conclude that the obligation imposed on debtor as a result of the decision and decree of October 6, 2003, was intended to provide maintenance of and support for plaintiff and therefore lies within the scope of § 523(a)(5).

To begin with, the language and substance of the decision and decree issued by the state court indicates that the award to plaintiff was meant to maintain and provide support for plaintiff.

After determining which assets were and which were not marital property, the state court stated that the total value of the assets available for *equitable distribution* was $144,277.00.  Despite its characterization of the award to plaintiff as "equitable distribution:, the rationale provided by the state court indicates that the court intended for the award to provide plaintiff with the means to support and maintain herself in the future. The court was not simply dividing marital property without regard for the economic circumstances of plaintiff and debtor.

Noting that the intention of the legislature in enacting the Divorce Code was to "effectuate economic justice", the state court identified the factors which "we have most borne in mind" in arriving at the distribution of marital that it did.  These factors were the parties' respective sources of income, their vocational skills, the opportunity of each spouse

to acquire capital assets and income in the future, and the economic circumstances of each party.

We understand this to mean that in arriving at the specific awards that it did, the state court considered the economic circumstances of debtor and plaintiff. Taking into account what it considered to be a disparity in their respective financial prospects, the state court determined that plaintiff should receive sixty-five percent of the marital assets while debtor should receive only thirty-five percent. In our estimation, this disparity in the distribution of marital property was meant to compensate for the disparity in their financial prospects.

The inference that the award to plaintiff was in the nature of maintenance of or support for plaintiff is reinforced when we apply the second "indicator" identified in *In re Gianakas* to the facts of this case.

Prior to the separation in February of 2000, plaintiff was a stay-at-home mother who had the important responsibility of taking care of the children and maintaining the family household. She had little or no time to work outside of the home after the children were born and lacked significant vocational skills to find employment in the job market that paid well. After the separation but before the divorce decree, plaintiff received training as an emergency medical technician and found employment as a medic and then as a medical technician in a hospital. Both were only part–time jobs, however, and had little prospect of turning into full-time jobs.

Debtor, by contrast, operated three parcel delivery routes when he and plaintiff separated in February of 2000. Although RPS/FedEx had taken away two of the routes by the time the state court rendered its decision and issued its decree, debtor still operated one of the routes, which provided him with a steady income. While debtor's income may not have been especially great by some standards when it issued the decision and divorce decree in October of 2003, it was considerably greater than was plaintiff's.[1]

Consideration of the third *In re Gianakas* "indicator" further supports the conclusion that the obligation imposed on debtor by the state court was intended to provide plaintiff with the means to maintain and support herself.

The marital residence, in which plaintiff still lived when the state court issued the divorce decree, was awarded to debtor. This meant that plaintiff had to move out and find another place to live which she would have to pay for on her own. In addition to shelter, plaintiff would have to pay on her own for other necessities of life such as food, clothing and transportation.

We previously determined that plaintiff's income in October of 2003 was considerably less than was debtor's. Moreover, the prospect of her finding employment that would significantly increase her income over the long haul was bleak. The *function* of the award of sixty-five percent of the marital assets to plaintiff, we conclude, was to provide plaintiff with the wherewithal to pay for these necessities of daily life.

---

[1] It is not relevant to this case that debtor sold the third route to another person at some unknown time in 2003 and was left with no income of his own. Our inquiry into whether an obligation falls within the scope of § 523(a)(5) is limited to considering the facts at the time the obligation arose. *Gianakas*, 917 F. 2d at 762. Subsequent changes in debtor's financial condition, whether propitious or not, play no role in the outcome of this case.

We conclude in light of the forgoing that the debt owed to plaintiff by debtor as a result of the divorce decree issued on October 6, 2003, lies within the scope of § 523(a)(5) of the Bankruptcy Code and therefore is not dischargeable.

As an alternative to § 523(a)(5), plaintiff also asserted that the debt in question was excepted from discharge by virtue of § 523(a)(15) of the Bankruptcy Code. We need not address this issue in light of our determination that the debt is excepted from discharge by virtue of § 523(a)(5).

An appropriate order will issue.

/s/
BERNARD MARKOVITZ
U.S. Bankruptcy Judge

Dated: **August 16, 2006**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| **JOSEPH FARELLI,** | : | Bankruptcy No. 05-23263 BM |
| | : | |
| Debtor | : | Chapter 7 |
| **KIRSTON FARELLI,** | : | |
| Plaintiff | : | |
| v. | : | Adversary No. 05-2905 BM |
| **JOSEPH FARELLI,** | : | Complaint Objecting To Discharge |
| | : | Of Debt |
| Defendant | : | |

## ORDER OF COURT

**AND NOW**, this **16th** day of **August**, 2006, as explained in the foregoing memorandum opinion, it hereby is **ORDERED**, **ADJUDGED** and **DECREED** that the debt owed by debtor Joseph A. Farelli to plaintiff Kirston A. Farelli be and hereby is **EXCEPTED FROM DISCHARGE**.

It is **SO ORDERED**.

/s/
**BERNARD MARKOVITZ**
U.S. Bankruptcy Judge

cm:  Robert R. Druzisky, Esq.
     Jonathan G. Babyak, Esq.
     Eric E. Bononi, Esq.
     Office of United States Trustee